UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPARTAN CAPITAL SECURITIES, LLC,<br>Plaintiff,<br>v.<br>VICINITY MOTOR CORP,<br>Defendant. | Case No. 23-cv-01180-TSH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 14 |

## I.   INTRODUCTION

In this breach of contract case, Spartan Capital Securities, LLC alleges Vicinity Motor Corp. improperly issued securities using a competing company, in violation of a letter of intent. Pending before the Court is Vicinity's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 14. Spartan filed an Opposition (ECF No. 20) and Vicinity filed a Reply (ECF No. 21). The Court finds this matter suitable for disposition without oral argument and **VACATES** the June 22, 2023 hearing. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court **GRANTS IN PART and DENIES IN PART** the motion.[1]

## II.   BACKGROUND

**A.   Parties**

Spartan is a limited liability company with its principal place of business at 45 Broadway, New York, New York 10006. Compl. ¶ 8, ECF No. 1. It offers financial services, including the underwriting and placement of public and private securities. *Id.* ¶ 1. Vicinity is a publicly traded Canadian corporation that sells buses and bus parts. *Id.* ¶ 9 & Ex. B (Vicinity's October 21, 2021

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 9, 10.

Prospectus Supplement filed with the SEC).

**B.    Letter of Intent**

On March 15, 2021, Vicinity, then known as Grande West Transportation Group, Inc.,[2] entered into a Letter of Intent ("LOI") with three investment banks: Spartan and non-parties Stifel Nicholaus & Company, Inc., and B. Riley Securities, Inc. (together, the "Underwriters") in connection with a proposed public offering of common stock of Vicinity.  *Id.* ¶ 12 & Ex. A (Letter of Intent).  The LOI states that "[t]he Underwriters expect to form an underwriting syndicate to purchase from the Company and to offer to the public approximately $60 million or greater of shares of Common Stock (the 'Securities')."  LOI at 1.  The LOI provides it "is intended to confirm the intent of Stifel to act as lead underwriters and book-running managers in connection with a proposed registered public offering of Common Stock pursuant to a firm commitment underwriting arrangement (the 'Offering')."  *Id.*

The LOI states that the Underwriters, after forming a syndicate, would effectuate the "Offering."  *Id.* at 1-2.  Specifically, the LOI recited: "The Underwriters will purchase the Securities from the Company at an offering price per share mutually agreed upon by the Company and the Underwriters, based upon market conditions and other factors, contemporaneously with the effectiveness of an underwriting agreement."  *Id.* at 1; *accord id.* ¶ 7 (referencing "the Underwriters' intent to form an underwriting syndicate and to enter into the Underwriting Agreement" with Vicinity).  At the same time, paragraph 6(a) of the LOI provides that "the termination of this engagement by any Underwriter shall not have any effect upon the engagement of any other Underwriter hereunder", and paragraph 7 states "it is acknowledged and agreed that the Underwriters shall be under no obligation of any nature whatsoever to the Company unless and until a definitive Underwriting Agreement in respect of the Offering is executed and delivered by the Company and the Underwriters."  *Id.* ¶¶ 6(a), 7.

Section 6(b) of the LOI provides that upon completion of the Offering, the Underwriters would have a right of first refusal to act as Vicinity's book-running lead managing underwriters,

---

[2] On or about March 29, 2021 Grande West Transportation Group, Inc. consolidated its share capital and changed its name to Vicinity Motors Corp.  *Id.* at 1 n. 1.

2

lead placement agents, lead sales agents, or in a similar capacity in the event that Vicinity retained or otherwise used the services of an investment bank or other similar financial institution to pursue, at any time during the term of the LOI or within 12 months from the date of completion of the Offering, a registered, underwritten offering of equity or equity-linked securities.  Compl. ¶ 15; LOI ¶ 6(b).  Specifically, section 6(b) states:

> Upon completion of the Offering, the Company hereby agrees to grant the Underwriters a right of first refusal to act as the Company's book-running lead managing underwriters, lead placement agents, lead sales agents, or in any other similar capacity, on the mutually agreed upon terms customary for the type of offering being sought and including compensation as mutually agreed at the time of such offering, subject to the allocation of economics below, in the even the Company retains or otherwise uses (or seeks to retain or use) the services of an investment bank or similar financial advisor to pursue, at any time during the term of this Letter of Intent or within 12 months from the date of the completion of the Offering, a registered, underwritten public offering of equity or equity-linked securities (in addition to the Offering) or a private placement of equity or equity-linked securities (in addition to the Offering) or a private placement of equity or equity -linked securities, which rights the Underwriters must exercise within 10 business days of receipt of notice by the Company. Stifel, B. Riley and Spartan shall receive not less than 45.0%, 35.0%, and 20.0%, respectively, of the underwriting discount or commission on any such transaction, unless such transaction in an at-the-market offering, in which case Stifel, B. Riley and Spartan shall receive not less than 50%, 32.5% and 17.5%, respectively, of the underwriting discount or commission on such transaction. Nothing contained herein, however, constitutes an obligation of the Underwriters to serve as bookrunning lead managing underwriters, lead placement agents, lead sales agents, or in a any other similar capacity. Any fees payable by the Company to the Underwriters pursuant to the foregoing shall be in addition to the payments and reimbursements set forth in section 5.

Section 10 of the LOI provides that Section 6(b) is binding and survives termination of the LOI:

> The agreement regarding the payment and reimbursement of fees and expenses as set forth in Sections 5 and 6 above and the agreements in Section 1, 6(b), 9, 11, 12, 13, and 14 hereof are binding agreements of the Company and its successors and assigns and shall survive any termination of this letter of Intent.

Compl. ¶ 17; LOI ¶ 10.

**C.     Spartan as Sole Underwriter and October 21, 2021 Offering**

After execution of the LOI, Spartan alleges it succeeded to the rights of Stifel and B. Riley to become the sole book-running manager for the public offering of 3,990,610 shares of common stock of Vicinity.  Compl. ¶ 18 (citing Ex. B).[3]

In its October 21, 2021 Prospectus Supplement filed with the SEC, Vicinity states that Spartan is the sole underwriter and book running manager for the October 21, 2021 Offering, as follows:

> The Units are being issued pursuant to an underwriting agreement dated October 21, 2021 (the "Underwriting Agreement") between the Corporation and Spartan Capital Securities, LLC, as underwriter (the "Underwriter")….
>
> Sole Book-Running Manager
> SPARTAN CAPITAL SECURITIES, LLC

*Id.*, Ex. B at 1-3/98, S-7, S-38.  Through this agreement, Spartan alleges it completed the LOI's Offering on October 25, 2021, by underwriting 3,990,610 shares of Vicinity at a price of $4.26 per share to the public for gross proceeds of approximately $17,000,000.  Compl. ¶ 19 & Ex. C (October 25, 2021 press release).  Thus, it alleges: "Per Section 6(b) of the LOI, upon completion

---

[3] As part of its opposition, Spartan requests the Court take judicial notice of a chain of emails from October 7-13, 2021 between Spartan/Spartan's counsel, Stifel, B. Riley and Vicinity's counsel, Andrea Cataneo.  Request for Judicial Notice ¶ 11, ECF No. 18-1.  Spartan argues judicial notice is proper under the doctrine of incorporation because it "has alleged in its Complaint that it succeeded to the rights of Stifel and B. Riley to become the sole 'underwriter' and 'book-running manager' for the public offering of 3,990,610 shares of common stock of the Defendant (Complaint [ECF #1], ¶ 18)," and "the October 7-13, 2021 Email Chain confirms that allegation, and it forms the basis of the Plaintiff's claims."  Request for Judicial Notice ¶ 11.  "Although as a general rule [a court] may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion, [it] may consider extrinsic evidence not attached to the complaint if the document's authenticity is not contested and the plaintiff's complaint necessarily relies on it."  *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").  "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  *Ritchie*, 342 F.3d at 908.  The purpose of the judicially created incorporation-by-reference doctrine is to "prevent plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  Here, Spartan does not reference these emails in its complaint and the emails do not form the basis of its claims.  As such judicial notice is improper and the Court **DENIES** Spartan's request.

4

of the Spartan October 2021 Offering, Spartan Capital earned and possessed the right of first refusal to act as a Defendant' [sic] book-running lead managing underwriter, lead placement agent, lead sales agent, or in a similar capacity in the event that Defendant retained or otherwise used the services of an investment bank or other similar financial institution to pursue, within 12 months from the date of completion of the Offering, a registered, underwritten offering of equity or equity-linked securities." *Id.* ¶ 20.

### D.     March 24, 2022 Offering

On March 24, 2022, Vicinity announced it had closed the sale of 4,444,445 common shares and warrants to purchase 4,444,445 common shares (together a "Unit") to investors at a combined purchase price of $2.70 per Unit in a registered direct offering for proceeds of approximately $12,000,000. *Id.* ¶ 21 & Ex. D (March 2022 press release).  A.G.P./Alliance Global Partners acted as the sole placement agent for Vicinity's March 2022 offering. *Id.* ¶ 22. Vicinity agreed to pay A.G.P. a cash fee equal to 7.0% of the gross proceeds from the offering (in the amount of $840,000) and agreed to issue to A.G.P. "that aggregate number of compensation warrants ('Agent Warrants') as is equal to 3.0% of the number of Common Shares issued as part of the Units pursuant to the Offering.  'Each Agent Warrant shall entitle the holder to acquire one Common Share (each, an 'Agent Warrant Share') at an exercise price of US$2.97 per Agent Warrant Share beginning on the six (6) month anniversary of the date of issuance . . . '" *Id.* ¶ 24 & Ex. E at 2 (March 23, 2022 prospectus supplement).

Vicinity completed its March 2022 offering "using largely, if not entirely, the same investors that Spartan Capital had identified for the Spartan October 2021 Offering." *Id.* ¶ 30. However, Spartan alleges that, per Section 6(b) of the LOI, it had an exclusive right of first refusal to act as the placement agent for the March 2022 offering and Vicinity had an obligation to notify Spartan of the offering so that it could exercise said right of first refusal. *Id.* ¶ 31.  Had it been notified of the March 2022 offering, Spartan "would have exercised its right of first refusal under Section 6(b) of the LOI., and it would have received substantial fees in the forms of cash and warrants to purchase Defendant's common stock in an amount at least equaling such amounts received by A.G.P." *Id.* ¶ 33.  As such, Spartan "has been significantly damaged and harmed by

1   Defendant's breach of Section 6(b) of the LOI and Defendant's improper conduct, which deprived

2   Spartan Capital from fees and warrants it otherwise would have received." *Id.* ¶ 34.

3         Spartan filed this case on March 16, 2023, alleging three causes of action against Vicinity"

4   (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing and

5   Duty To Perform With Reasonable Care; and (3) Unjust Enrichment. *Id.* ¶¶ 37-58.

6         Vicinity filed the present motion on April 24, 2023.

### III. LEGAL STANDARD

8         A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

9   sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff

10  can prove no set of facts in support of his claim which would entitle him to relief." *Cook v.*

11  *Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8

12  provides that a complaint must contain a "short and plain statement of the claim showing that the

13  pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts

14  to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

15  570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility

16  that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint

17  must therefore provide a defendant with "fair notice" of the claims against it and the grounds for

18  relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

19        In considering a motion to dismiss, the court accepts factual allegations in the complaint as

20  true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v.*

21  *St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551

22  U.S. 89, 93-94 (2007). However, "the tenet that a court must accept a complaint's allegations as

23  true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere

24  conclusory statements." *Iqbal*, 556 U.S. at 678.

25        If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

26  request to amend the pleading was made, unless it determines that the pleading could not possibly

27  be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

28  banc) (citations and quotations omitted). However, a court "may exercise its discretion to deny

United States District Court
Northern District of California

1    leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated

2    failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

3    party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876,

4    892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182

5    (1962)).

## IV. DISCUSSION

### A. Breach of Contract

The elements of a cause of action for breach of contract are: 1) the existence of the contract; 2) performance by the plaintiff or excuse for nonperformance; 3) breach by the defendant; and 4) damages. *First Commercial Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001). Vicinity argues Spartan's breach of contract claim should be dismissed because it does not adequately allege a breach of either Section 6(b) or 9 of the LOI.

#### 1. Section 6(b)

Spartan alleges Vicinity breached Section 6(b) of the LOI by not notifying it of the March 2022 offering and failing to offer Spartan the right of first refusal to act as sole placement agent. Compl. ¶ 44. Vicinity argues this claim fails because Spartan does not allege any facts showing that an "Offering" occurred. Specifically, although Spartan points to the October 25, 2021 stock sale, Vicinity notes that Stifel did not lead that capital raise and, as Spartan itself alleges, Spartan was "acting as the sole underwriter for the" October 2021 stock sale. Mot. at 6 (quoting Compl. ¶ 40 & Ex. B). Vicinity also notes the March 2022 stock sale "did not involve Stifel, B. Riley and Plaintiff, inter alia, (i) forming an underwriting syndicate, (ii) collectively entering into an underwriting agreement with Vicinity, and/or (iii) collectively purchasing from Vicinity and offering to the public $60 million or more of Vicinity stock." *Id.* (citing LOI at 1-2; Compl., Ex. B).

Accepting Spartan's factual allegations as true and construing its pleadings in the light most favorable to it, the Court finds Spartan adequately pleads a breach of contract claim. Although Vicinity maintains that Stifel had to act as lead underwriter or book-running manager to be an Offering under the LOI, the LOI defines the "Offering" as "a proposed registered public

1  offering of Common Stock pursuant to a firm commitment underwriting arrangement." LOI at 1.
2  The October 2021 Offering appears to be just that – a registered public offering of Vicinity's
3  stock, executed by and between Vicinity and Spartan.  *See* Compl., Exs. B, C.  While the LOI
4  states the "Underwriters **expect** to form an underwriting syndicate to purchase from the Company
5  and to offer to the public **approximately** $60 million or greater of shares of Common Stock," LOI
6  at 1 (emphasis added), it is possible that such underwriting syndicate was an expectation, not a
7  requirement, and the dollar figure/amount of the stock to be offered was an approximation.  At this
8  stage, it is unclear whether they were conditions precedent or requirements under the LOI as
9  Vicinity argues.
10      Under California law, "[a] condition precedent is either an act of a party that must be
11 performed or an uncertain event that must happen before the contractual right accrues or the
12 contractual duty arises." *JMR Constr. Corp. v. Env't Assessment & Remediation Mgmt.*, Inc., 243
13 Cal. App. 4th 571, 593 (2015) (internal quotation and citation omitted).  As "conditions precedent
14 are not favored," *Schwab v. Bridge*, 27 Cal. App. 204, 207 (1915), however, "an agreement will be
15 strictly construed against a party asserting that its provisions impose a condition precedent,"
16 *Helzel v. Superior Court*, 123 Cal. App. 3d 652, 663 (1981).  In particular, provisions in an
17 agreement "are not to be construed as conditions precedent unless such construction is required by
18 clear, unambiguous language." *JMR Construction Corp.*, 243 Cal. App. 4th at 594.
19 *See Microsoft Corp. v. Hon Hai Precision Indus. Co.*, 2019 WL 3859035, at *5 (N.D. Cal. August
20 16, 2019) (setting forth examples of "conditional language" indicative of condition precedent and
21 holding, where "essential bargain" between parties was use of patents in exchange for payment of
22 royalties, licensee's "obligation to pay arose when it availed itself of the patent rights granted to
23 it," not when patent holder issued invoice in accordance with contractual "invoicing provision");
24 *Crescent Point Energy Corp. v. Tachyus Corp.*, 2022 WL 2390991, at *2 (N.D. Cal. July 1, 2022)
25 ("Here, the invoicing provision on which Crescent Point relies does not include any language
26 suggesting issuance of an invoice was a condition precedent to Crescent Point's obligation to pay
27 the monthly fees; for example, the contract does not state Crescent Point must make a monthly
28 payment 'if' or 'provided that' Tachyus issues an invoice. . . .  Rather, the 'essential bargain'

between the parties is Tachyus's making its services available to Crescent Point in return for a fee, with the obligation to pay arising upon Crescent Point's receipt of those services, not Tachyus's issuance of an invoice."); *cf. Schwab*, 27 Cal. App. at 205-07 (finding, where agreement included promise to guarantee debt, followed by phrase "provided the amount may be due and presented to [guarantor] by December 3, 1905," the "words employed . . . clearly support[ed] the contention . . . that presentation of the account due and within the time specified was intended as a condition precedent").

While the LOI states that "this Letter of Intent is intended to confirm the ***intent*** of Stifel to act as lead underwriters and book-running managers," the language of the LOI does not make clear that an underwriting syndicate was required, that Stifel needed to act a lead underwriter and/or bookrunning manager, or that involvement by any or all of the underwriters was required for the Offering. In fact, section 6(a) provides that "the termination of this engagement by any Underwriter shall not have any effect upon the engagement of any other Underwriter hereunder," and section 7 provides that "it is acknowledged and agreed that the Underwriters shall be under no obligation of any nature whatsoever to the Company unless and until a definitive Underwriting Agreement in respect of the Offering is executed and delivered by the Company and the Underwriters". LOI at § 6(a), § 7. Moreover, Spartan alleges that, after execution of the LOI, it succeeded to the rights of Stifel and B. Riley to become the sole book-running manager for the public offering of 3,990,610 shares of common stock of Vicinity. Compl. ¶ 18 (citing Ex. B).

Vicinity also argues that even if Spartan could satisfy the definition of "Offering," it cannot recover for breach because section 6(b) grants the right of first refusal to "the Underwriters" collectively, not to Spartan alone, and the complaint does not allege that Stifel, B. Riley and Spartan, together, would have exercised any right of first refusal. Mot. at 9. However, as Spartan alleges it succeeded to the rights of Stifel and B. Riley after execution of the LOI, it is plausible that neither the right of first refusal nor exercise thereof was required by Stifel and/or B. Riley.

In a breach of contract action, the non-moving party's interpretation of the contract need only be plausible to withstand a Rule 12(b)(6) motion. *Sisley v. Sprint Communs. Co., L.P.*, 284

9

Fed. App'x 463, 467 (9th Cir. 2008) (citing *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008)); *Glancy v. Carl Zeiss, Inc.*, 2015 WL 7755995, at *4 (C.D. Cal. Nov. 30, 2015) ("For plaintiff to survive a 12(b)(6) motion to dismiss, plaintiff's complaint must set forth a 'reasonable interpretation' of the contract at issue."). Here, Spartan plausibly alleges: (1) it entered into a valid and binding contract with Vicinity, the LOI; (2) Spartan met its contractual obligations; (3) Vicinity breached its contract by failing to provide notice of the March 2022 offering and failing to provide Spartan the right of first refusal provided in section 6(b) of the LOI; and (4) Spartan was damaged as a result of the breach. Thus, as Vicinity's interpretation is not the only reasonable construction of the LOI, the Court must deny its motion to dismiss. *See, e.g., Catena v. Capitol Records, Inc.*, 2012 WL 12942740, at *7 (C.D. Cal. July 11, 2012) (denying motion to dismiss, reasoning that although the court did "not definitively decide . . . the proper interpretation of the contract," it could not "conclude at this stage of the litigation that Capitol's interpretation is the only reasonable construction of the contract"); *Agreement Enf't, Inc. v. Pataro*, 2021 WL 8742105, at *6 (C.D. Cal. July 27, 2021) (denying motion to dismiss where contract was "reasonably susceptible" to plaintiff's interpretation). As such, the Court declines to resolve the parties' differing views on interpretation of the LOI by this motion to dismiss. *See Hall v. FCA US LLC*, 2022 WL 1714291, at *1 (9th Cir. May 27, 2022) (stating district court erred in adopting party's proposed interpretation at the motion to dismiss stage where the contract was ambiguous and interpretation involved a question of fact); *Picketfence Inc. v. R.R. Donnelley & Sons Co.*, 2007 WL 9811030, at *2 (N.D. Cal. Nov. 6, 2007) ("question of contract interpretation and resolving ambiguity . . . would be prematurely decided on a Motion to Dismiss"); *Intel Corp. v. Via Techs., Inc.*, 2001 WL 777085, at *6 (N.D. Cal. Mar. 20, 2001) ("Such contract-interpretation questions should not be resolved on a motion to dismiss."); *Lee v. Gen. Nutrition Cos., Inc.*, 2001 WL 34032651, at *12 (C.D. Cal. Nov. 26, 2001) (denying motion to dismiss where defendants raised "issues of contract interpretation and other highly factual issues that are inappropriate for resolution in a motion to dismiss.").

Accordingly, the Court **DENIES** Vicinity's motion to dismiss Spartan's breach of contract claim.

**2.     Section 9**

Spartan alleges it is entitled to reimbursement from Vicinity for its attorneys' fees and costs under section 9 of the LOI.  Compl. ¶ 47.  Vicinity argues Spartan cannot recover under this provision for two reasons: (1) it is not a prevailing party, and the fee shifting provision is void to the extent it would permit a non-prevailing party to recover; and (2) it has not otherwise adequately alleged a claim for breach of the provision.  Mot. at 10.  However, these same arguments have been routinely rejected on motions to dismiss where the contract at issue contains an attorney fee shifting provision.  *See Portillo v. ICON Health & Fitness, Inc.*, 2019 WL 6840759, at *6 (C.D. Cal. Dec. 16, 2019) ("ICON's argument that Portillo is not entitled to attorneys' fees because he is not a successful party is, at best, premature.  Parties frequently include requests for attorneys' fees in their initiating papers.  The Court cannot fathom how ICON could have possibly understood that Portillo was requesting that it pay attorneys' fees at this stage of the litigation."); *Khan v. Bank of Am., N.A.*, 2011 WL 5079510 (N.D. Cal. October 25, 2011) (borrowers' request for attorneys' fee survived the lender's motion to dismiss where the borrowers alleged the promissory note and deed of trust provided for attorneys' fees to be awarded to a prevailing party); *Microsoft Corp.*, 2019 WL 3859035, at *6 ("For now, it is enough that Microsoft has proffered a plausible interpretation of Section 4.2.5 that would permit recovery of attorney fees.  Accordingly, Hon Hai's motion to dismiss the prayer for attorney fees is DENIED.").  Accordingly, the Court **DENIES** Vicinity's motion to dismiss Spartan's request for attorney's fees.

**B.     Breach Of The Implied Covenant Of Good Faith And Fair Dealing And Duty To Perform With Reasonable Care**

Spartan alleges Vicinity breached its duty of good faith and fair dealing by refusing to: (1) notify Spartan that it intended to make the March 2022 offering, which was within 12 months of the Spartan October 2021 offering and the LOI; (2) notify Spartan that it intended to enter into an agreement with A.G.P.; and (3) depriving Spartan of its right of first refusal under Section 6(b) of the LOI.  Compl. ¶ 53.  Vicinity argues this claim should be dismissed because it is redundant of Spartan's breach of contract claim.  Mot. at 12.

### 1. Legal Standard

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683 (1988) (internal quotations omitted). "The implied covenant of good faith and fair dealing is that neither party will do anything that will injure the right of the other to receive the benefits of the agreement." *Openshaw v. FedEx Ground Package Sys., Inc.*, 576 F. App'x 685, 687 (9th Cir. 2014). "The covenant of good faith finds particular application where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith." *Spy Phone Labs LLC v. Google Inc.*, 2016 WL 6025469, at *9 (N.D. Cal. Oct. 14, 2016) (quoting *Carma Developers, Inc.*, 2 Cal. 4th at 372). "In California, the factual elements necessary to establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010). To determine whether a party has breached the obligation or covenant of good faith and fair dealing, a court must examine not only the express language of the parties' contract, but also any course of performance or course of dealing that may exist between the parties. *Moreau v. Air France*, 356 F.3d 942, 954 (9th Cir. 2004).

"[A]lthough the California Supreme Court has held that a plaintiff may bring *both* a breach of contract claim and a claim for breach of the implied covenant of good faith and fair dealing, the Supreme Court has made clear that when both causes of action cite the same underlying breach, the implied covenant cause of action will be superfluous with the contract cause of action." *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 716 (N.D. Cal. 2014) (emphasis in original) (citing *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 327 (2000)). In other words, a claim alleging breach of the implied covenant of good faith and fair dealing must be based on a different breach than the breach of contract claim. *Landucci*, 65 F. Supp. 3d at 716.

**2. Analysis**

The grounds Spartan alleges in support of its implied covenant claim are also cited as supporting its breach of contract claim. *Compare* Compl. ¶ 44 ("Defendant's failure to notify Spartan Capital of the March 2022 Offering . . . constitute[s] breach[] of the valid and binding provisions of the LOI . . ."); *id.* ¶ 43 ("On or about March 23, 2022, without providing any notice to Spartan Capital, Defendant completed the March 2022 Offering, and pursuant to the A.G.P. Placement Agreement, A.G.P. acted as the sole placement agent for Defendant's March 2022 Offering . . ."); *id.* ¶ 44 ("Defendant's . . . failure to offer to Spartan Capital the right of first refusal to act as sole placement agent for the March 2022 Offering constitute[s] breach[[] of the valid and binding provisions of the LOI . . .") *with id.* ¶ 53 ("As alleged more fully above, Defendant breached its duty of good faith and fair dealing by refusing, in bad faith, to: (1) notify Spartan Capital that it intended to make the March 2022 Offering, which was within 12 months of the Spartan October 2021 Offering and the LOI; (2) notify Spartan Capital that it intended to enter into a Placement Agreement with A.G.P.; and (3) depriving Plaintiff of its right of first refusal under Section 6(b) of the LOI."). Moreover, the damages Spartan seeks are identical in both claims. *Compare id.* ¶ 45 ("As a direct, actual, and proximate result of Defendant's breaches of the LOI, Spartan Capital has sustained significant damages of no less than $840,000, the Cash fee paid to A.G.P., as well as the loss of 133,333 placement agent warrants at an exercise price of (US) $2.97 . . .") *with id.* ¶ 55 ("As a direct, actual and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing and breach of the duty to perform with reasonable care, Spartan Capital has sustained damages, including but not limited to the $840,000 cash fee paid to A.G.P. . . . as well as the loss of 133,333 placement agent warrants at an exercise price of (US) $2.97 . . ."). As such, it appears that Spartan's breach of implied covenant claim is "simply duplicative [of its breach of contract cause of action], and thus may be disregarded." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1392 (1990); *Beluca Ventures LLC v. Einride Aktiebolag*, 2023 WL 2456716, at *8 (N.D. Cal. Mar. 10, 2023) (dismissing implied covenant claim as superfluous where breach of contract and breach of implied covenant were based on the same facts and sought the same remedy); *Bulletin Mktg. LLC v. Google LLC*,

13

2018 WL 3428562, at *3 (N.D. Cal. July 13, 2018) (rejecting a claim for breach of the implied covenant of reasonable care where "the alleged implied duty does not exist because the contract at issue already expressly contains the purported obligation. Bulletin Marketing cannot assert a non-existent implied duty. The claim which Bulletin Marketing seeks to assert would be subsumed in its breach of contract claim."); *Pierry, Inc. v. Thirty-One Gifts, LLC*, 2017 WL 4236934, at *5 (N.D. Cal. Sept. 25, 2017) (dismissing an implied covenant claim and stating that "the Complaint pleads no facts showing the on-site support and resources are separate obligations not stated in the contract . . . . As such, the Complaint does not state a claim for breach of the implied covenant that is distinguishable from Pierry's breach of contract claim. Pierry's implied covenant claim is therefore redundant"); *Stonebrae, L.P. v. Toll Bros., Inc.*, 2010 WL 114010, at *7 (N.D. Cal. Jan. 7, 2010) (denying a motion to amend to add an implied covenant claim: "There is not[h]ing that the implied covenant would add to the obligations already required under the express Purchase Agreement . . . Accordingly, Stonebrae's claim of breach of the implied covenant is superfluous.").

"However, a claim for breach of the implied covenant of good faith and fair dealing is not superfluous with a breach of contract claim when the covenant claim is based "on a different breach than the contract claim." *Landucci*, 65 F. Supp. 3d at 716 (citing *Daly v. United Healthcare Ins. Co.*, 2010 WL 4510911, at *4 (N.D. Cal. Nov. 1, 2010). Thus, for example, "[a] claim for breach of the implied covenant of good faith and fair dealing is not duplicative of a breach of contract claim when a plaintiff alleges that the defendant acted in bad faith to frustrate the benefits of the alleged contract." *Davis v. Capitol Records, LLC*, 2013 WL 1701746, at *4 (N.D. Cal. Apr. 18, 2013) (citing *Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 853 (C.D. Cal. 2004) (denying motion to dismiss breach of the implied covenant of good faith and fair dealing claim, noting that implied covenant and breach of contract claims "will always be based on the same facts" and "will always seek the same remedy; the same remedies are available for both claims."). In its opposition, Spartan argues Vicinity "engaged in conduct meant to deprive Spartan of the benefits of the express terms of Section 6(b) of the LOI," and therefore "unfairly frustrated a benefit of the LOI." Opp'n at 22. Although Spartan does not further elaborate on the

14

1  details of this theory, the Court gleans that there could be a basis for Spartan's covenant claim that
2  is distinguishable from the basis underlying its contract claim such that Spartan's covenant claim
3  is not superfluous. As such, it is not clear that amendment would be futile. Therefore, the Court
4  will give Spartan leave to amend if there is a basis for its implied covenant claim that is
5  distinguishable from the basis underlying the contract claim. If Spartan realleges its covenant
6  claim, it must rest its claim on allegations concerning Vicinity's actions outside the terms of the
7  LOI.
8        Accordingly, the Court **GRANTS** Vicinity's motion to dismiss Spartan's claim for breach
9  of the implied covenant of good faith and fair dealing **WITH LEAVE TO AMEND**.

10  **C.  Unjust Enrichment**

11        In its unjust enrichment claim, Spartan alleges Vicinity "has been unjustly enriched in that
12  Defendant was not required to pay compensation to Spartan Capital that it would have otherwise
13  had to under the LOI, had Defendant properly notified Spartan Capital of its intention to pursue
14  the March 2022 Offering and engage A.G.P. as its sole placement agent." Compl. ¶ 57. Vicinity
15  argues this claim must fail because: (1) Spartan impermissibly seeks to recover the same amounts
16  allegedly due under section 6(b) of the LOI while asserting that section 6(b) is "valid and
17  binding"; and (2) the complaint's own allegations demonstrate that Vicinity was not unjustly
18  enriched. Mot. at 14.
19        In California, there is no independent claim for unjust enrichment because unjust
20  enrichment "describe[s] the theory underlying a claim that a defendant has been unjustly conferred
21  a benefit through mistake, fraud, coercion, or request." *Astiana v. Hain Celestial Grp., Inc.*, 783
22  F.3d 753, 762 (9th Cir. 2015) (internal quotation marks omitted). Thus, courts "construe the cause
23  of action as a quasi-contract claim seeking restitution." *Id.* (quoting *Rutherford Holdings, LLC v.
24  Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014); *see also Bruton v. Gerber Prods. Co.*, 703 F.
25  App'x 468, 470 (9th Cir. 2017) ("[T]he California Supreme Court has clarified California law,
26  allowing an independent claim for unjust enrichment to proceed[.]")).
27        A quasi-contract claim for unjust enrichment "'cannot lie where there exists between the
28  parties a valid express contract covering the same subject matter.'" *Rutherford Holdings, LLC*,

15

223 Cal. App. 4th at 231 (quoting *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996)); *see also Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) ("As a matter of law, an unjust enrichment claim does not lie where the parties have an enforceable express contract."). However, at the pleading stage, a plaintiff may alternatively allege both a breach of contract claim and a quasi-contract claim. *See* Fed. R. Civ. P. 8(d)(2), (3); *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858-59 (9th Cir. 2007) ("[W]e allow pleadings in the alternative—even if the alternatives are mutually exclusive."). Consistent with this rule, claims for unjust enrichment and breach of contract are frequently allowed to proceed in tandem at the motion to dismiss stage. *See, e.g., Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1122 (N.D. Cal. 2013); *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928, 955-956 (N.D. Cal. 2012); *Weingand v. Harland Fin. Solutions, Inc.*, 2012 WL 3763640, at *4 (N.D. Cal. Aug. 29, 2012); *Hawthorne v. Umpqua Bank*, 2012 WL 1458194, at *3 (N.D. Cal. Apr. 26, 2012). To do so, a plaintiff must allege that the supposed contract was unenforceable or void. *See Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 998 (N.D. Cal. 2020) (noting a plaintiff may alternatively plead a breach of contract claim and quasi-contract claim only if "the plaintiff also pleads facts suggesting that the contract may be unenforceable or invalid"); *Clear Channel Outdoor, Inc. v. Bently Holdings Cal. LP*, 2011 WL 6099394, at *9 (N.D. Cal. Dec. 7, 2011) ("[E]ven though a plaintiff may not ultimately prevail under both unjust enrichment and breach of contract, it may plead both in the alternative."); *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 2016 WL 829210, at *4 (E.D. Cal. Mar. 3, 2016) (same).

Here, Spartan alleges an enforceable contract existed between it and Vicinity but fails to allege that the same contract was unenforceable or void. *See* Compl. ¶ 44 (stating that section 6(b) is "valid and binding"). Moreover, the claims for breach of section 6(b) and unjust enrichment seek recovery of the exact same thing. *Compare id.* ¶ 45 ("As a direct, actual, and proximate result of Defendant's breaches of the LOI, Spartan Capital has sustained significant damages of no less than $840,000 . . . as well as the loss of 133,333 placement agent warrants at an exercise price of (US) $2.97 . . .") *with id.* ¶ 58 ("As a direct, actual, and proximate result of Defendant's unjust enrichment Spartan Capital has sustained significant damages of no less than $840,000 as well as

16

the loss of 133,333 placement agent warrants at an exercise price of US $2.97 . . ."). Accordingly, the Court finds Spartan does not adequately plead its unjust enrichment claim. *See Saroya*, 503 F. Supp. 3d at 998 (dismissing plaintiff's unjust enrichment claim because he "did not deny the existence or enforceability of the alleged enforceable agreement"); *Lindner v. Occidental Coll.*, 2020 WL 7350212, at *9 (C.D. Cal. Dec. 11, 2020) (dismissing unjust enrichment claim where it was undisputed that the relationship between the parties was governed by a contract).

Therefore, the Court **GRANTS** Vicinity's motion to dismiss Spartan's unjust enrichment claim. As it is not clear that amendment would be futile, dismissal is **WITH LEAVE TO AMEND**.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Vicinity's motion to dismiss. If it chooses to do so, Spartan may file an amended complaint by July 11, 2023

**IT IS SO ORDERED.**

Dated: June 13, 2023

THOMAS S. HIXSON
United States Magistrate Judge